UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | | |
|---|---|---|
| WILLIAM R. MILNES, JR., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Docket No. 1:11-cv-00049 (jgm) |
| | : | |
| BLUE CROSS AND BLUE SHIELD OF VERMONT | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

**MEMORANDUM AND ORDER**
(Docs. 68, 71, 77, 80, 82)

I.     Introduction

  The Plaintiff, William R. Milnes, Jr., and the Defendant, Blue Cross Blue Shield of Vermont

("BCBSVT"), have filed cross-motions for summary judgment in this contract action.  There is no

dispute BCBSVT breached an agreement with Mr. Milnes to pay him incentive compensation

following his retirement.  Rather, the parties dispute whether a governmental investigation into Mr.

Milnes' compensation at BCBSVT excuses its breach of contract.  Mr. Milnes initially moved for

partial summary judgment, claiming performance under the agreement is neither impracticable nor

void against public policy.  (Doc. 68.)  BCBSVT responded by moving for summary judgment based

on these same affirmative defenses.  (Doc. 71.)  Having reviewed the parties' cross-motions for

summary judgment, as well as the record developed in support, the Court finds there is no dispute

that performance is excused under the doctrine of legal impracticability.  As to Mr. Milnes' breach of

contract claim, the Court therefore grants BCBSVT's motion for summary judgment and denies Mr.

Milnes' motion for summary judgment.

  In its motion for summary judgment, BCBSVT has also moved for judgment as a matter of

law on Mr. Milnes' breach of the duty of good faith and fair dealing claim.  This relief is also

granted, as it is both appropriate and unopposed.  The parties have also filed various procedural

motions, including a request for additional discovery from Mr. Milnes, which the Court addresses in

a separate section of this decision.  (Docs. 77, 80, 82.)

II.    Factual Background

Blue Cross Blue Shield of Vermont is a nonprofit hospital service corporation regulated by

the Vermont Department of Banking, Insurance, Securities and Health Care ("BISHCA").  Doc. 71-

2 at ¶ 1; V.S.A. §§ 4512, 4513.  The Vermont Statutes require such corporations to "operate[] solely

for the benefit of [their] subscribers" and require BISHCA to "insure benefits are provided at

minimum cost under efficient and economical management."  8 V.S.A. §§ 4512(a)-(c), 4513(c).  A

hospital service corporation is "not a private business operating freely within the competitive

marketplace; it is a quasi-public business" subject to regulatory oversight.  In re Vermont Health

Serv. Corp., 144 Vt. 617, 624 (1984).

William R. Milnes, Jr. served as the President and Chief Executive Officer of BCBSVT from

1998 through November 2008.  (Doc. 68-2 at ¶ 1.)  BCBSVT and Mr. Milnes entered an

employment agreement in 1998 and a second agreement in March 2006.  (Doc. 68-4 at 1.)  The

second employment agreement (hereinafter, "the Employment Agreement") provided a rolling

three-year employment term, which automatically extended an additional year unless BCBSVT

notified Mr. Milnes that it would not grant an extension.  (Doc. 68-2 at ¶ 4.)  The Employment

Agreement provided Mr. Milnes with an initial base salary of $475,000, "which may be increased,

but not decreased."  Id. at ¶ 5.  It also provided an annual short-term incentive bonus of twenty-five

to seventy-five percent of his base salary, as well as a long-term bonus of about seventeen to fifty

percent of his salary.  Id. at ¶ 6.  The short-term bonus rewarded Mr. Milnes for satisfying corporate

goals set at the beginning of each calendar year.  (Doc. 68-4 at § 3(b).)  The long-term bonus

rewarded him for satisfying three-year goals in that year.  Id. at § 3(c).  The Employment Agreement required BCBSVT to pay both the short-term and long-term bonuses "no later than March 15 of the year following the year in which [Mr. Milnes] earned the bonus."  Id. at § 3(b), (c).  Mr. Milnes forfeited any unpaid incentive compensation upon the termination of his employment.  Id.

Mr. Milnes participated in BCBSVT's Supplemental Executive Retirement Plan ("SERP") under the Employment Agreement.  (Doc. 68-4 at § 5(b); Doc. 71-2 at ¶ 7.)  The plan entitled him to receive annual retirement income equal to sixty percent of his average compensation over his five highest-earning years at BCBSVT.  (Doc. 68-7 at § 11.)  In lieu of annuity payments, Mr. Milnes elected to receive one lump sum SERP payment upon his retirement.  (Doc. 71-2 at ¶¶ 7, 16.)  BCBSVT also provided Mr. Milnes with certain benefits under its "qualified plan."  (Doc. 68-7 at § 11.)

In March 2008, BCBSVT's Board of Directors increased Mr. Milnes' base salary to $525,000.  (Doc. 68-2 at ¶ 7.)  The term of his employment also automatically extended through March 2011, as provided in the Employment Agreement.  Id.; Doc. 68-4 at § 6.  Mr. Milnes informed the Board in June 2008 that he intended to retire.[1]  Compare Doc. 71-2 at ¶ 13 with Doc. 77-1 at ¶ 13.  Mr. Milnes and BCBSVT ultimately selected November 30, 2008 as the effective date of his voluntary retirement.  (Doc. 68-6 at 1.)  Under the Employment Agreement, Mr. Milnes forfeited his unpaid short-term bonus for work performed in 2008 by retiring before its pay-out date.  (Doc. 71-2 at ¶¶

---

[1] BCBSVT and Mr. Milnes have both postured considerably in their statements of disputed facts.  (Docs. 71-1, 77-1.)  BCBSVT has "disputed" facts by proffering additional facts for context, without actually contradicting the underlying factual statement.  E.g. 71-1 at ¶ 9.  Mr. Milnes has "denied [facts] as immaterial," a legal argument more appropriately addressed in his memorandum.  E.g. Doc. 77-1 at ¶¶ 7-11.  A party disputes facts by citing to particular parts of the record in support or showing that the materials cited by the adverse party are either inadmissible or do not establish a dispute.  Fed. R. Civ. P. 56(c)(1)(A)-(B).  Accordingly, in its search for genuine factual disputes, the Court has examined the documents in the summary judgment record and not the parties' characterizations of these documents.

Case 1:11-cv-00049-jgm   Document 88   Filed 03/28/13   Page 4 of 18



18-19.)  Mr. Milnes likewise forfeited his unpaid long-term bonuses for work performed in 2006 through 2008, which had 2009, 2010, and 2011 pay-out dates.  Id.  In a November 19, 2008 letter, BCBSVT offered to make these payments in exchange for a general release.  Id. at ¶ 26.  The letter specifically provided that:

> [In exchange for a general release,] BCBSVT will pay you the incentive compensation that would have been payable to you as 2008 [short-term] incentive compensation pursuant to . . . [the] Employment Agreement (based on actual 2008 results), had you remained an employee through the scheduled pay-out date for said incentive compensation.  For purposes of the three active cycles of the [long-term] incentive compensation program described in . . . [the] Employment Agreement (i.e., the program cycles scheduled to pay-out in 2009, 2010 and 2011), you will receive credit and be paid incentive compensation for 2006, 2007 and 2008 at the actual performance level achieved, as applicable for each active cycle.

(Doc. 68-6 at 1.)  Mr. Milnes accepted BCBSVT's offer on November 21, 2008.  Id. at 3.  Neither Mr. Milnes nor BCBSVT disputes that, at the time, this "Letter Agreement"[2] was an enforceable agreement.  Nor do they dispute they believed it was consistent with BCBSVT's statutory obligation to operate solely for the benefit of its subscribers.  See Doc. 71-2 at ¶ 27.

BCBSVT paid Mr. Milnes a total of $7,354,465 in 2008.  Id. at ¶ 32.  This amount included a $6,484,197 lump sum SERP payment, as well as a $526,881 qualified retirement plan payment.  Id. at ¶ 29.  The amount also included $883,630 in compensation for the eleven months Mr. Milnes worked at BCBSVT that year.[3]  Id. at ¶ 30.  Based on work performed in 2006 through 2008, Mr.

---

[2] Mr. Milnes characterizes this agreement as a severance agreement, while BCBSVT has described it as a retirement agreement.  (Doc. 76 at 2 n.2.)

[3] The Court notes that the SERP, qualified retirement, and compensation payments, when added together, actually total $7,894,708.  The $7,354,465 total derives from a BISHCA order, described in detail below, as do the specific payment amounts.  The discrepancy is not material to this dispute and may well stem from an intermixing of pre-tax and post-tax income.

Milnes was due $450,429 in short-term and long-term incentive bonus compensation in 2009.  (Doc. 68-2 at ¶ 28.)  An additional long-term bonus of $129,707 was due in 2010 for work performed in 2007 and 2008.  Id.

In a regulatory filing made in March 2009, BCBSVT revealed to BISCHA that it had paid Mr. Milnes over seven million dollars in 2008.  (Doc. 71-2 at ¶ 32.)  BISCHA began investigating these payments later in March and served BCBSVT with a subpoena to produce additional documents in April.  Id. at ¶ 33.  An attorney at BISCHA informed BCBSVT's general counsel, Christopher Gannon, that it would view very unfavorably payment of incentive compensation before the investigation concluded.  Id. at ¶ 34.  Attorney Gannon subsequently requested that Mr. Milnes return a portion of his SERP payment and voluntarily relinquish any claim to incentive compensation under the Letter Agreement.  Id. at ¶ 35.  Through his attorney, Mr. Milnes declined to do so.  Id.  His attorney also contacted Attorney Gannon in July and September 2009 to determine if, and when, BCBSVT intended to make the incentive payments.  Id. at ¶ 36.  Attorney Gannon responded in late September 2009 that BCBSVT would not make the payments because BISHCA might find that they constituted excessive compensation.  Id. at ¶ 37.  He explained BCBSVT's Board believed BISHCA would consider the payments in violation of its statutory obligations, given the course of the investigation.  (Doc. 71-13 at 2.)

BISHCA issued an order in November 2009 in which it denied a request from BCBSVT to increase its rates.  (Doc. 71-14 at 5.)  The order found the proposed rate increases unreasonable and provided BCBSVT with an opportunity to modify its request.  Id. at 4-6.  The order also identified a trend towards increased health care costs at BCBSVT.  Id.  The order specifically questioned whether BCBSVT, through the post-retirement compensation it provided Mr. Milnes, had violated its statutory obligation to provide cost-effective health insurance for the sole benefit of its

subscribers.  Id. at 5-6.  The order also questioned whether BCBSVT's Board had violated

Vermont's non-profit corporation laws by unreasonably compensating him.  Id.  To address these

concerns, BISHCA ordered BCBSVT to show cause why it should not be ordered to file a plan to

recover any excessive post-retirement compensation paid to Mr. Milnes.  Id. at 6.

         In response, BCBSVT retained a law firm and offered evidence and argument that: (1) its

Board had reasonably relied on expert compensation consultants in concluding that Mr. Milnes'

compensation was not excessive; (2) it likely could not recover any portion of his compensation

under Vermont law; and (3) it had taken various remedial measures since his retirement, including

reducing the compensation paid to its senior officer group by a million dollars, eliminating its long-

term incentive compensation plan, retaining a new executive compensation consultant, and freezing

the SERP benefits of his replacement.  (Doc. 71-2 at ¶ 40.)

         Based on its interactions with BISHCA, BCBSVT came to believe in early 2010 that

BISHCA would find that Mr. Milnes had received excessive compensation.  Id. at ¶ 41.  BCBSVT

therefore accepted an invitation to negotiate a consent order in order to obtain the most favorable

result possible.  Id.  During the negotiations that followed, BISHCA's general counsel informed

Attorney Gannon that the incentive compensation payments provided in the Letter Agreement were

clearly excessive.  Id.  He asked Attorney Gannon whether BCBSVT had made, or intended to

make, the payments.  Id.  Attorney Gannon informed him that BCBSVT had not made those

payments, nor did it intend to do so.  Id.  The negotiations between BISHCA and BCBSVT

culminated in the issuance of a supplemental order on June 1, 2010 ("Supplemental Order").  Id. at

¶ 42.  BCBSVT consented to this order.  (Doc. 68-2 at ¶ 16.)

         BISHCA concludes in the Supplemental Order that Mr. Milnes received at least three million

dollars in excess compensation from 2001 through 2008.  (Doc. 68-7 at ¶¶ 53, 55.)  The order states

that "total compensation between and including 2001 and 2008, including the post-retirement payment in December 2008, was excessive compensation; i.e. greater than required to manage and operate [BCBSVT] solely for the benefit of subscribers . . . at a minimum cost under efficient and economical management." Id. at ¶ 53. Relying on a report by an independent executive compensation consultant, the Supplemental Order faults BCBSVT for only using data from other Blue Cross Blue Shield companies, including a "disproportionate number" of much larger companies, to set Mr. Milnes' annual compensation. Id. at ¶ 54(b). Consequently, BCBSVT "award[ed] Mr. Milnes higher base salary, higher total annual compensation, and higher retirement compensation than was typical for chief executives of similar companies of a similar size." Id. The Supplemental Order concludes that, quantitatively, Mr. Milnes received the following excess compensation:

> [BISCHA] concludes that Mr. Milnes' compensation for the last eight years of his employment was excessive by a factor of at least 25%. Using the factor of 25% for purposes of calculating the portion of Mr. Milnes' compensation which was excessive, [BISHCA] concludes that Mr. Milnes' annual compensation for the last eight years of his employment was excessive by at least $1.4 million, and Mr. Milnes' SERP payment was excessive by at least $1.6 million. The Commissioner concludes, therefore, that Mr. Milnes received excess compensation payments from BCBSVT in an amount of at least $3 million.

Id. at ¶ 55.[4]

The incentive compensation payments due in 2009, 2010, and 2011 under the Letter Agreement fall outside this finding. See id. at ¶¶ 53, 55. The Supplemental Order only covers "total compensation between and including 2001 and 2008." Id. at ¶ 53. The compensation for 2008 is

---

[4] The order defines "annual compensation" as "the sum of base salary and incentive bonus compensation under Mr. Milnes' employment agreements with BCBSVT." Id. at ¶ 2.

limited to incentive compensation payments <u>made</u> in 2008, not <u>earned</u> that year.  See <u>id.</u> at ¶¶ 3, 53.

A factual finding in the Supplemental Order reveals this distinction.

> [T]otal payments to Mr. Milnes in 2008 amounted to $7,354,465, . . . includ[ing], a $6,484,197 payment under Mr. Milnes' SERP agreement with [BCBSVT] . . . and a $526,881 payment under the 'qualified' retirement plan in addition to salary and incentive bonus payments totaling $883,630. [BCBSVT] has informed [BISCHA] that it has not paid Mr. Milnes certain incentive bonus compensation payments which were to have been paid in 2009 and that it does not intend to make those payments.

<u>Id.</u> at ¶ 3.  The reference in the above passage to incentive compensation due in 2009 is the only specific reference in the Supplemental Order to incentive compensation due under the Letter Agreement.  (Doc. 68-2 at ¶ 18.)

Having concluded that Mr. Milnes received excessive compensation, BISHCA ordered BCBSVT to account to its subscribers for these overpayments.  (Doc. 68-7 at ¶ 56.)  BISHCA did so despite acknowledging the "significant steps" BCBSVT took during the investigation "to realign compensation payments and corresponding responsibilities for executives and officers . . . , including substantial reductions in incentive bonus opportunities and benefits."  <u>Id.</u> at ¶¶ 43-47, 56. The Supplemental Order required BCBSVT to either "recover[] . . . the excessive compensation from Mr. Milnes or from any other legally responsible party, or . . . elect to hold its subscribers harmless by providing a commensurate reduction in premiums for subscribers."  <u>Id.</u> at pg. 18-19. Referencing the report submitted by BCBSVT, BISHCA acknowledged that "legal considerations . . . might bear on the potential for recovery of the excessive compensation paid to Mr. Milnes."  <u>Id.</u> at ¶ 57.  BCBSVT ultimately elected to hold its subscribers harmless, through a premium reduction it covered with its reserves, instead of seeking recovery from Mr. Milnes.  (Doc. 71-2 at ¶ 45.)

BCBSVT has not paid Mr. Milnes the incentive compensation due under the Letter Agreement, which totals $580,000.  <u>Id.</u> at ¶ 48.  Mr. Milnes filed this action in February 2011.  (Doc.

1.)  He seeks damages for BCBSVT's breach of the Letter Agreement, as well as its breach of the duty of good faith and fair dealing implied into that agreement.  (Doc. 51 at 4-6.)

III.    <u>Discussion</u>

    A.    <u>Motion for Summary Judgment</u>

        1.    <u>Standard of Review</u>

Federal Rule of Civil Procedure 56(a) requires a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The Court must resolve ambiguities and draw inferences in favor of the non-moving party.  <u>Salahuddin v. Goord</u>, 467 F.3d 263, 272 (2d Cir. 2006) (citation omitted).  "Where both parties have moved for summary judgment, 'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" <u>Murray v. Int'l Bus. Machs. Corp.</u>, 557 F. Supp. 2d 444, 448 (D. Vt. 2008) (quoting <u>Schwabenbauer v. Bd. of Educ. of Oleans</u>, 667 F.2d 305, 314 (2d Cir. 1981)).

The court's function is not to resolve disputed issues of fact but only to determine whether there is a genuine issue of material fact to be tried.  <u>See, e.g.</u>, <u>Rule v. Brine, Inc.</u>, 85 F.3d 1002, 1011 (2d Cir. 1996).  "[T]he mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." <u>Id.</u> at 248. A "genuine dispute" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u> "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing

party, summary judgment is improper." <u>Fischl v. Armitage</u>, 128 F.3d 50, 56 (2d Cir. 1997) (internal

quotation marks and citation omitted).

    2. <u>Impracticability</u>

  BCBSVT contends that the doctrine of legal impracticability excuses it from performing

under the Letter Agreement.  Vermont law[5] recognizes this affirmative defense and looks to the

Restatement (Second) of Contracts to determine its parameters.  <u>See, e.g.,</u> <u>Waterbury Feed Co. v.</u>

<u>O'Neil</u>, 181 Vt. 535, 540 (2006).  A fact a party had "no reason to know and the nonexistence of

which is a basic assumption on which the contract is made" may render a contract impracticable.

<u>Agway, Inc. v. Marotti</u>, 149 Vt. 191, 193 (1988).  "Performance may be impracticable because

extreme and unreasonable difficulty, expense, injury, or loss to one of the parties will be involved."

<u>Id.</u> (quoting Restatement (Second) of Contracts § 261 cmt. d (1981) ("Restatement")).  Vermont law

favors a "narrow application" of this defense.

    To warrant [its] application . . . the impossibility must consist in the
    nature of the thing to be done and not in the inability of the party to
    do it . . . [I]f what is agreed to be done is in nature possible and
    lawful, it must be done; . . . the promissor takes the risk within the
    limits of his undertaking of being able to perform.

<u>Id.</u> (quoting <u>City of Montpelier v. Nat'l Surety Co.</u>, 97 Vt. 111, 119 (1923)) (citing cases).

  The Restatement recognizes that"[i]t is a basic assumption on which the contract was made

that the law will not directly intervene to make performance impracticable when it is due."

Restatement at § 264 cmt. a (internal quotations omitted).  "[I]f supervening governmental action

prohibits a performance or imposes requirements that make it impracticable, the duty to render that

performance is discharged," provided the promisor is neither at fault for the governmental action

---

[5]  Both parties agree that Vermont law governs this diversity action.  (Doc. 68 at 4; Doc. 71 at 13.)

nor agreed to perform despite it.  Id. at §§ 261, 264 cmt. a.  A defendant need not prove the non-occurrence of supervening governmental action was a "basic assumption on which a contract was made" because the Restatement recognizes this principle as a matter of law.  See M.J. Paquet, Inc. v. New Jersey Dep't of Transp., 171 N.J. 378, 390-91 (2002).  BCBSVT has nevertheless shown, through the affidavits of its general counsel and the chair of its board, that it did not anticipate BISHCA would find Mr. Milnes' compensation excessive when it entered the Letter Agreement.  (Doc. 71-4 at ¶ 12; Doc. 71-5 at ¶ 14.)  BCBSVT's reliance on an independent consultant in setting his compensation further supports this showing.  (Doc. 68-7 at ¶ 19.)  Mr. Milnes has not pointed to any contrary evidence in the summary judgment record.  Both legally and factually, there is no dispute the parties assumed BISHCA would not investigate, and declare unlawful, the compensation that Mr. Milnes received from BCBSVT.

The applicability of the impracticability doctrine instead depends on whether payment under the Letter Agreement would subject BCBSVT to "extreme and unreasonable difficulty, expense, injury, or loss."  Marotti, 149 Vt. at 193.  It is well-established that the defense excuses performance where supervening governmental action renders it unlawful.  See, e.g., Restatement at § 264.  Relying on BISHCA's investigation of the compensation it paid Mr. Milnes, included the resulting Supplemental Order, BCBSVT claims payment under the Letter Agreement would violate its statutory obligation to operate solely for the benefit of its subscribers.  (Doc. 71 at 16-17.)  Mr. Milnes responds that BISHCA has yet to rule that payments under the Letter Agreement constitute excessive compensation.  (Doc. 68 at 5.)  In the absence of an explicit prohibition against the payments, any reliance on the doctrine of impracticability to excuse performance is purely speculative.  Id. at 5-8.  Mr. Milnes relies heavily on a close reading of the Supplemental Order, which, as he stresses, only addresses compensation received from 2001 through 2008.  Id.  He

asserts the Supplemental Order neither covers nor excuses the nonpayment of compensation due in 2009 and 2010.  Id.

Mr. Milnes is correct that the Supplemental Order stops short of explicitly finding the payments due under the Letter Agreement excessive.  While BCBSVT has shown the payments reward work <u>performed</u> from 2006 through 2008, the Supplemental Order only rules that payments <u>received</u> from 2001 through 2008 constitute excessive compensation.  Yet reading the Supplemental Order so narrowly ignores three critical, undisputed facts: (1) BISHCA has concluded BCBSVT paid Mr. Milnes three million dollars in excess compensation; (2) Mr. Milnes declined to return these funds; and (3) Mr. Milnes now seeks an additional $580,000 in incentive compensation from BCBSVT.  Mr. Milnes would have BCBSVT pay him additional compensation above and beyond the amount already ruled excessive.  Although due to Mr. Milnes following his retirement, these payments reward work performed during the same years BISHCA ruled he received excessive compensation.  The impracticability doctrine excuses BCBSVT from further breaching its statutory obligation to its subscribers by making these payments.  See <u>Int'l Minerals & Chem. Corp. v. Llano, Inc.</u>, 770 F.2d 879, 887 (10th Cir. 1985) ("government policy need not be explicitly mandatory to cause impracticability").

Through the Supplemental Order, BCBSVT has shown that the payments under the Letter Agreement would violate the Vermont Statutes.  Mr. Milnes has not made a contrary showing.  Nor has he pointed to evidence in the summary judgment record that raises a genuine dispute about this material fact.  Mr. Milnes instead responds with a variety of arguments, none of which are availing, including: (1) BCBSVT should make the payments and hold its subscribers harmless; (2) the Vermont Statutes do not permit BISHCA to order the payments withheld; and (3) BCBSVT

negotiated away his incentive compensation to curry favor with BISHCA, thereby rendering the impracticability doctrine inapplicable.

First, to the extent the payments constitute excessive compensation, Mr. Milnes contends BCBSVT should nevertheless make them, await another determination from BISHCA that it compensated him excessively, and then hold its subscribers harmless.  (Doc. 68 at 8.)  He would have BCBSVT elect to act unlawfully, rather than breach the Letter Agreement.  The doctrine of impracticability relieves parties from making this very choice.  See Centex Corp. v. Dalton, 840 S.W.2d 952, 954-56 (Tex. 1992) (regulatory agency's order conditioning completion of financial transaction on nonpayment of finders-fees rendered performance under fee agreement impracticable).  In this case, the Vermont Statutes provide that hospital service corporations "shall be maintained and operated solely for the benefit of the subscribers thereof."  8 V.S.A. § 4512(a) (emphasis added).  BCBSVT has shown that paying Mr. Milnes additional compensation would violate this statutory mandate.  As a consequence for violating it, the Supplemental Order required BCBSVT to hold its subscribers harmless or recover the payments from Mr. Milnes.  It by no means ruled that a health service corporation may avoid violating the Vermont Statutes simply by holding its subscribers harmless for costly management decisions.

Second, as BISHCA lacks authority under the Vermont Statutes to compel BCBSVT to withhold or recover the payments,[6] Mr. Milnes argues it is not legally impracticable for BCBSVT to make them.  (Doc. 68 at 7-8.)  He interprets the impracticability doctrine to apply only to government action that renders performance unlawful and also enjoined or reversible.  See Doc. 76

---

[6] Following an amendment in 2012, the Vermont Statutes permit BISHCA, now known as the Department of Financial Regulation, to "order a person to make restitution or provide disgorgement of any sums shown to have been obtained in violation" of the statutory provisions it enforces.  8 V.S.A. 13(d); 2012 Vt. Legis. Serv. No. 78 (H. 512).

at 3-4.  Regardless of whether the Vermont Statues authorize BISHCA to order the payments withheld or recovered, the payments would be unlawful.  "The fact that it is still possible for a party to perform if he is willing to break the law and risk the consequences does not bar him from claiming [impracticability]."  Restatement at § 264 cmt. a.

Third, Mr. Milnes argues BCBSVT cannot base an impracticability defense on a consent order it negotiated.  (Doc. 77 at 2-3.)  He asserts BCBSVT breached the Letter Agreement to "curry favor" with BISHCA while negotiating the Supplemental Order and seeking a rate increase.[7]  His argument discounts the context in which these negotiations took place.  BISHCA began investigating his compensation before BCBSVT informed Mr. Milnes that it would not make the payments under the Letter Agreement.  BCBSVT consented to the Supplemental Order after BISHCA made it clear it would find his compensation violated the Vermont Statutes.  There is no evidence in the record that suggests BCBSVT placed its interests above Mr. Milnes' interests during the negotiations.  Rather, BCBSVT has shown it obtained concessions that benefitted Mr. Milnes, including, most significantly, convincing BISHCA not to order the recovery of the excessive compensation already paid to him.  While a party cannot claim impracticability based on events it caused, BISHCA, not BCBSVT, initiated the investigation here.  Restatement at § 261 cmt. d.  BCBSVT's attempts to minimize its consequences through negotiations with BISHCA does not, without more, bar it from relying on the impracticability defense.

---

[7] BISHCA may only issue supplemental orders "[i]n connection with a rate decision."  8 V.S.A. § 4513(c).  The Vermont Statutes do not authorize BISHCA to interpose its regulatory authority in the place of management at any time; rather, it must await a rate request to do so.  See In re Vermont Health Serv. Corp., 155 Vt. 457, 464 (1990).  As a consequence, the negotiations with BCBSVT and BISHCA necessarily arose in connection with a rate increase request.  See Doc. 71-14 at 5-6 (denying rate request and ordering BCBSVT to show cause why compensation not excessive).

BCBSVT has shown it is entitled to summary judgment on its impracticability affirmative defense, thereby excusing its performance under the Letter Agreement.  Summary judgment is therefore GRANTED in favor of BCBSVT on the breach of contract claim.  Mr. Milnes' motion for summary judgment on this claim is DENIED.   Count I of the Second Amended Complaint is DISMISSED.  (Doc. 51 ¶¶ 31-38.)

BCBSVT also moves for summary judgment on Count II of the Second Amended Complaint.  This count claims BCBSVT breached its duty of good faith and fair dealing by repudiating the Letter Agreement and failing to compensate him according to its terms.  Id. at ¶ 41.  Mr. Milnes premises his good faith and fair dealing claim on the same contractual breach that gave rise to his breach of contract claim.  Vermont law does not recognize a separate cause of action for violation of the duty of good faith and fair dealing when a plaintiff also pleads a breach of contract claim based on the same conduct.  Kelly v. Provident Life & Acc. Ins. Co., 695 F. Supp. 2d 149, 155 (D. Vt. 2010) (citing Monahan v. GMAC Mortg. Corp., 179 Vt. 167, 187 n.5 (2005)).  Mr. Milnes has not advanced an alternative theory for finding BCBSVT violated the duty of good faith and fair dealing implied in the Letter Agreement.  Nor is one evident from the record.  Summary judgment is therefore GRANTED in favor of BCBSVT on Count II, which is DISMISSED accordingly.

B.    Miscellaneous Motions

Having decided the parties' cross-motions for summary judgment, some housekeeping is in order.  Mr. Milnes has moved to strike references throughout BCBSVT's exhibits and pleadings to the motivations for his retirement and the execution of the Letter Agreement.  (Doc. 77 at 9-10.)  A prior order in this case ruled that these facts were no longer in issue.  (Doc. 64 at 2.)  Mr. Milnes has moved, alternatively, for an opportunity to investigate these facts through additional discovery.  (Doc. 77 at 10.)  In deciding this motion for summary judgment, the Court has culled the parties'

pleadings and supporting exhibits for relevant facts.  It has disregarded irrelevant facts, including ones rendered inadmissible by this Court's prior order.  The Federal Rules of Civil Procedure do not require the courts to strike each document it deems irrelevant, much less factual averments within documents it deems irrelevant.  <u>Montgomery v. NLR Co.</u>, 2:05-CV-251, 2007 WL 2792833, at *7 (D. Vt. Sept. 24, 2007).  Mr. Milnes' motion to strike is therefore DENIED.

Mr. Milnes' request for additional discovery is also DENIED.  (Doc. 77 at 10; Doc. 86 at 3-4.)  A court may order additional discovery under Federal Rule of Civil Procedure 56(d) if "a nonmovant shows . . . it cannot present facts essential to justify its opposition."  Fed. R. Civ. P. 56(d).  By affidavit or declaration, the nonmovant must describe: "(1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's efforts were unsuccessful."  <u>Gualandi v. Adams</u>, 385 F.3d 236, 244 (2d Cir. 2004) (interpreting prior version of rule).  Mr. Milnes contends additional discovery is necessary to allow him to dispute particular facts in the record, including his motivations for retiring, succession planning by BCBSVT's Board, internal discussions regarding the Letter Agreement, the course of negotiations between BISHCA and BCBSVT, and various remedial measures BCBSVT took following his departure.  (Doc. 86 at 4 n.2; Doc. 77-1.)  Most of these facts fall beyond the scope of this summary judgment decision. Because Mr. Milnes contends his incentive compensation was negotiated away, however, the Court did rely on facts BCBSVT submitted regarding its negotiations with BISHCA.

Mr. Milnes asserts in his Rule 56(d) affidavit that he needs additional discovery to investigate "the details of alleged off-the-record conversations with [BISCHA]" that BCBSVT disclosed for the first time in its filings.  (Doc. 77-2 at ¶ 5.)  His affidavit does not identify particular facts he hopes to obtain.  <u>Gualandi</u>, 385 F.3d at 244-45.  Nor does it suggest why these facts might create a genuine

issue of material fact.  Id.  "[A]n opposing party's mere hope that further evidence may develop prior to trial is an insufficient basis upon which to justify the denial of [a summary judgment] motion."  Gray v. Town of Darien, 927 F.2d 69, 74 (2d Cir. 1991).  Because Mr. Milnes filed his motion for summary judgment first, prompting BCBSVT to move for summary judgment on the same grounds, the Court is especially unconvinced by his claim that additional discovery is necessary.

For its part, BCBSVT has moved that specified portions of its statement of undisputed facts be deemed admitted and undisputed.  (Doc. 82.)  BCBSVT asserts that Mr. Milnes failed to respond directly to specific undisputed facts, thereby rendering them admitted for summary judgment purposes.  Id. at 2.  As addressed in footnote one above, both parties have postured considerably in their statement of disputed facts.  In deciding the parties' cross-motions for summary judgment, the Court examined the factual basis for each denial, its materiality, and the need for additional discovery to properly respond to it.  BCBSVT's motion to deem specified portions of its statement of undisputed facts is DENIED AS MOOT.

BCBSVT has also moved to exceed the page limit in its reply to Mr. Milne's opposition to its motion for summary judgment.  (Doc. 80.)  That motion is GRANTED.

IV.     Conclusion

BCBSVT's motion for summary judgment (Doc. 71) is GRANTED, and this case is dismissed in its entirety.  Mr. Milnes' motion for summary judgment (Doc. 68) is DENIED.  His motion to strike and motion for additional discovery (Doc. 77) are also DENIED.  BCBSVT's motion that specified portions of its statement of undisputed facts be deemed admitted and undisputed (Doc. 82) is DENIED AS MOOT.  Its motion to exceed the page limit in its reply to Mr. Milnes' motion for summary judgment (Doc. 80) is GRANTED.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 28th day of March, 2013.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
United States District Judge